Filed 12/2/15  In re E.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | H042137 (Santa Clara County Super. Ct. No. 1-14-JD22456) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. F.A., Defendant and Appellant. | |

Father of one-year-old E.M., appeals the juvenile court's visitation order following the Welfare and Institutions Code[1] section 366.26 hearing.  He asserts the juvenile court erred in ordering that E.M. have no visitation with Father until he was no longer incarcerated.

**STATEMENT OF THE FACTS AND CASE**

_____
[1] All further statutory references are to the Welfare and Institutions Code.

In March 2014, when E.M. was three-months old, she was taken into protective custody by the Santa Clara County Department of Family and Children's Services (Department). When she was born, E.M. tested positive for methamphetamine.

Mother told the social worker from the Department that Father was E.M.'s biological father, and that he had been in jail since August 2013. Mother was offered and accepted family reunification services. Mother did not participate in drug treatment and continued to use illegal drugs.

The Department filed a dependency petition alleging Mother's drug abuse, and that Father's whereabouts were unknown. The juvenile court ordered E.M. detained on March 24, 2014.

The Department's jurisdiction/disposition report dated April 14, 2014 recommended that E.M. be made a dependent of the court and that Mother receive reunification services.

On June 4, 2014, at the combined jurisdiction and disposition hearing, the court sustained the Department's petition and ordered reunification services for Mother.

The six month review report recommended that Mother's reunification services be terminated and that a section 366.26 hearing be set. E.M. was in the care of her great-aunt.

In September 2014, the Department determined that Father was incarcerated at High Desert State Prison. One of the paternal family members had seen the Mother, and the paternal grandmother called the social worker. The grandmother told the social worker that Father would be released from prison in January 2015. The grandmother said they wanted to be involved in E.M.'s life if Father was the father.

The court held the six-month review hearing on November 19, 2014. Father was still incarcerated, but was represented by counsel who waived his appearance. The court terminated Mother's reunification services and ordered paternity testing for F.A.

2

Following the hearing, the social worker met with Father, who said that he would like to be a part of E.M.'s life if he was found to be her father. He planned to live with family after his release from prison in January 2015. Father said that he had known Mother for about one year, and that he became incarcerated one month or so after she found out she was pregnant. Father said that he had not heard from Mother since he became incarcerated. The social worker believed that Father was genuine in his expression of interest in being part of E.M.'s life.

Father was released from prison on January 2, 2015. Paternity results received January 21, 2015 confirmed that Father is the biological father of E.M. Father told the social worker that he was happy to hear the results of testing. He was living with his aunt and uncle and told the social worker that he needed to find employment. Father was on parole for three years. The social worker believed that Father was genuinely interested in becoming a part of his E.M.'s life, and that if he made the positive changes he planned, he would be able to build a good relationship with E.M.

The social worker concluded that placement with Father was not currently appropriate, but recommended that he be provided with weekly visitation while he took the necessary steps to become self-sufficient.

On February 18, 2015, the juvenile court declared Father the biological father of E.M. The court ordered supervised visits a minimum of one time a week, for two hours. Father had his first visit with E.M. on February 20, 2015. The section 366.26 report recommended weekly visitation for Father

On March 19, 2015, the court conducted the section 366.26 hearing. Both parents were present and both were in custody. Father did not have an expected release date at that time. With regard to visitation, the Department recommended that Father have visitation upon release from custody. E.M.'s caregiver lived two hours from the prison, and did not have reliable transportation for a four hour commute. Counsel for Father

3

represented that the paternal grandmother had expressed willingness to transport E.M. for visits, and requested that the court order allow for an option for paternal relatives to provide for that.

The court granted the guardianship with the great-aunt and left the dependency case open. The court ordered supervised visitation for Father one time per month for two hours, upon his release from custody.  The court gave the Department discretion to select the location and supervisor of the visits, to increase the frequency and duration of the visits, and permit unsupervised visits with notice to all parties.

**DISCUSSION**

Section 366.26, subdivision (c)( 4 )(C), provides that once guardianship is ordered as the permanent plan, "[t]he court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."

We review the juvenile court's order of visitation under the abuse of discretion standard, reversing only when the court's decision exceeds the bounds of reason, leading to an arbitrary or absurd determination.  (See *In re Jennifer* G. (1990) 221 Cal.App.3d 752, 757.)

Here, following its determination that guardianship would be the permanent plan, the court ordered that Father was to have supervised visitation with E.M. once per month after he was no longer incarcerated.  Prior to this, Father had only visited with E.M. two times during the time between his initial incarceration and his current prison commitment.

Father argues that he should be granted visitation while he is in prison, because the two prior visits he had with E.M. while out of custody were not detrimental to E.M. While it is true that the visitation prior to the second incarceration was without incident, there was no information before the court regarding Father's current incarceration.

4

Specifically, the court had no evidence of why Father was back in prison or what his anticipated release date would be. In addition, there was no information presented to the court about how the visitation at the prison would be facilitated.

In ordering visitation after Father was released from custody, the court considered the fact that the prison was located 90 miles away from E.M.'s placement. Therefore, in order for visitation to occur while Father was incarcerated, E.M. would need to travel a total of four hours roundtrip. E.M.'s attorney and the social worker from the Department opposed visitation under circumstances that would require such a young child to travel a great distance.

Here, the court did make an order of visitation. In addition, the court did not terminate jurisdiction. As a result, the visitation order will continue to be reviewed by the juvenile court, and the court may change the order if Father is released from custody, or if Father provides the court with information about what visitation options are available while he is in prison. The case will continue to be reviewed by the juvenile court.

We find that the court did not abuse its discretion in ordering visitation for Father when he is released from custody.

**DISPOSITION**

The order is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.

*In re E.M.; D.F.C.S. v. F.A.*
**H042137**

6